```
IN THE UNITED STATES DISTRICT COURT
    FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```

| | |
|---|---|
| **RACHEL WESTBROOK,** | ) |
| Plaintiff, | ) |
| v. | ) No. 2:16-cv-02784-JTF-tmp |
| **BLUE CROSS BLUE SHIELD OF TENNESSEE, et al.,** | ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

On September 30, 2016, *pro se* plaintiff Rachel Westbrook filed a complaint against Blue Cross Blue Shield of Tennessee, Teresa Sims, Jean Claire Doyle, and Aaron Smith alleging employment discrimination under Title VII of the Civil Rights Act of 1964. (ECF No. 1.) Westbrook moved for leave to proceed *in forma pauperis* on the same day that she filed her complaint; the court granted her motion on October 3, 2016. (ECF Nos. 2 & 6.) This case has been referred to the United States magistrate judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate, pursuant to Administrative Order 2013-05 (Apr. 29, 2013). The undersigned magistrate judge recommends that Westbrook's complaint as against Teresa Sims, Jean Claire Doyle, and Aaron

Smith pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) be dismissed *sua sponte* for the reasons stated below.[1]

## I. PROPOSED FINDINGS OF FACT

Rachel Westbrook, *pro se*, filed a complaint alleging employment discrimination against her former employer, Blue Cross Blue Shield of Tennessee ("Blue Cross"). The U.S. Equal Employment Opportunity Commission ("EEOC") issued Westbrook a Right to Sue Letter, which she received on July 20, 2016. Westbrook alleges that, as compared to other employees, Blue Cross treated her unfairly and disproportionately with respect to Blue Cross's policies on personal phone calls.[2] This treatment, she claims, culminated in the wrongful termination of her employment on July 12, 2016.[3] Westbrook names in her

---

[1] Concurrently with this Report and Recommendation, the court, via separate order (ECF No. 7), has directed the Clerk to issue process for defendant Blue Cross Blue Shield of Tennessee and deliver said process to the Marshal for service.

[2] The term "policies" here includes informal or unofficial prescribed standards of conduct. Westbrook claims that Blue Cross in fact had no official policy regarding personal phone calls.

[3] The date of Westbrook's termination is not entirely clear from the face of the complaint. Westbrook identifies her termination date as July 12, 2016 in the body of her complaint. This is consistent with her filing the initial EEOC charge on July 13, 2016, as indicated by the filing stamp on that document. (ECF No. 1 at 14.) The same EEOC document, however, states that Westbrook's termination occurred on June 12, 2016. (ECF No. 1 at 14.) The June date appears to be an error. Westbrook's suspension, which she indicates occurred on June 30, 2016, most likely preceded her termination.

complaint three individuals as defendants in addition to Blue Cross. These are Teresa Sims, Westbrook's supervisor at the time of her termination; Jean Claire Doyle, a representative from Blue Cross's human resource department; and one Aaron Smith, who is otherwise unidentified in Westbrook's complaint.[4]

Westbrook alleges that Blue Cross terminated her "for having personal telephone calls," something she says Blue Cross characterized as work avoidance. (ECF No. 1 at 7.) She contends that her termination was wrongful because "we all made personal phone calls," and Blue Cross had no personal phone call policy in place at the time. (ECF No. 1 at 7.) She maintains at the same time that she never made any personal calls. (ECF No. 1 at 7.) Westbrook, who is black, contends that her termination was discriminatory because two of her co-workers, a white female and a black male, received suspensions rather than terminations after being similarly cited for taking personal phone calls at work. (ECF No. 1 at 7–8.)

Additionally, Westbrook claims she was the victim of retaliatory action by her employer and supervisors after she informed Blue Cross that her former supervisor had been

---

[4]Westbrook refers to an unnamed "white male manager" in her complaint. (ECF No. 1 at 8.) She alleges that her supervisor told her this manager had "advised the staff that [Westbrook] could no longer work on any additional work projects." (ECF No. 1 at 8.) This manager's identity cannot be determined from the face of the pleadings, and it remains unclear what role, if any, Aaron Smith played in the events Westbrook describes.

"stealing tuition reimbursement[s]." (ECF No. 1 at 8.) Westbrook claims she was excluded from all subsequent work projects, suffered "continuous harassment," was refused other jobs for which she was the most qualified applicant, and "was continuously given [disciplinary marks]" by her supervisor, Teresa Sims, which were baseless and removed or corrected when brought to the attention of human resources. (ECF No. 1 at 8-9.) Westbrook suggests that her work difficulties escalated after she complained to human resources, including being approached by Jean Claire Doyle, a representative from human resources, and being insulted and demeaned by Sims. (ECF No. 1 at 9.)

Westbrook and Sims met with Doyle shortly thereafter. Westbrook says that she was suspended from work at this meeting and told the reason for the suspension was Westbrook's failure to answer her personal phone line, which Westbrook disputes. (ECF No. 1 at 10.) Westbrook says that Blue Cross subsequently informed her she was being terminated for the same alleged offense. (ECF No. 1 at 14.)

Westbrook brings this complaint under Title VII of the Civil Rights Act of 1964. (ECF No. 1 at 1.) She claims Blue Cross discriminated against her on the bases of race, color, and gender/sex. (ECF No. 1 at 4.) She seeks relief in the form of re-employment and $50,000 in back pay. (ECF No. 1 at 6.)

Westbrook additionally seeks $50,000 in compensatory damages, claiming false rumors have been spread to the effect that she had been "stealing time" at work and that she received a negative work referral after her termination. (ECF No. 1 at 3, 6.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

    (i) is frivolous or malicious;

    (ii) fails to state a claim on which relief may be granted; or

    (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i-iii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). Accordingly, "[a]ccepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"

Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court

nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**B. Failure to State a Claim**

Westbrook brings her complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Title VII grants employees relief against their employers for certain proscribed employment practices. 42 U.S.C. §§ 2000e-2(a), e-5(b). The Sixth Circuit has interpreted Title VII to impose no individual liability on managers or supervisors who do not also qualify as employers under Title VII. See Wathen v. General Electric Co., 115 F.3d 400, 403-06 (6th Cir. 1997); see also Roof v. Bel Brands USA, Inc., 641 F. App'x 492, 496 (6th Cir. 2016). In Wathen, the Sixth Circuit found "that the statute as a whole, the legislative history and the case law support the

conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII."[5] 115 F.3d at 405. The allegations in the complaint do not plausibly demonstrate that any of the three individuals named in Westbrook's complaint is subject to liability under Title VII. The undersigned therefore recommends that Westbrook's Title VII claim be dismissed as against Teresa Sims, Jean Claire Doyle, and Aaron Smith for failure to state a claim on which relief may be granted.

### III. RECOMMENDATION

For the reasons stated above, it is recommended that Westbrook's Title VII complaint be dismissed *sua sponte* as against Teresa Sims, Jean Claire Doyle, and Aaron Smith, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

November 16, 2016
Date

---

[5]Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). "Person" for these purposes includes individuals, partnerships, corporations, governments, and other entities. See id. § 2000e(a).

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**